(C. D. 1160)

PACIFIC VEGETABLE OIL CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 18, 1949)

Lawrence, Tuttle & Harper (*Walter I. Carpeneti* of counsel) for the plaintiff.
David N. Edelstein, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The merchandise the subject of this action, arising at the port of San Francisco, consists of an importation from

Argentina of linseed, also commonly known as flaxseed. The collector liquidated the entry covering the importation, which had been segregated into linseed and screenings, as follows: Upon 55,372 bushels of 56 pounds of linseed, a duty of 65 cents per bushel was assessed under the provision for flaxseed in paragraph 762 of the Tariff Act of 1930; upon 39 tons of screenings, a duty of 5 per centum ad valorem was levied under the provision therefor in paragraph 731, Tariff Act of 1930, as amended by the trade agreement with Canada, T. D. 49752.

The entry bears notations to the effect that the screenings constituted 2.46 per centum of the shipment. Therefore, the remainder of the shipment, namely, 97.54 per centum, represented the quantity assessed as flaxseed.

The plaintiff claims that the weight accorded the linseed was excessive. Also, that a greater allowance should have been made for screenings in harmony with the analysis of The Linseed Association of New York, which was accepted by the Government officials as representing the correct percentages of cleaned linseed and screened materials.

There was admitted in evidence as exhibit 2–A a certificate of analysis of The Linseed Association of New York which appears to be a reanalysis. The cleaned linseed is noted thereon as 96.92 per centum. Other oleaginous or oily substances represent only .62 per centum of the shipment and the non-oleaginous substances contained therein appear as 2.46 per centum. Apparently exhibit 2–A replaced an earlier analysis which gave a greater quantity of clean linseed and a less quantity of screenings. The earlier analysis was marked in evidence as exhibit 2–B. Exhibit 1 was the only other documentary evidence presented. It consists of a memorandum upon customs Form 4371, and formed a part of the papers forwarded to the court with the protest. Therein, the chief liquidator drew attention of the appraiser to the certificates of analysis and reanalysis and inquired what part of the quantity represented by the .62 per centum on the certificate of reanalysis should be treated as screenings. The examiner replied on behalf of the appraiser that there was 97.54 per centum flaxseed and also 2.46 per centum screenings.

The testimony at the trial on behalf of the plaintiff was presented by four customs officials at the port of San Francisco—the appraiser, P. H. Watson; the deputy collector of customs in charge of the liquidating office, Leo J. O'Reilly; the customs liquidator of the entry, James D. Stewart; and the customs examiner of the merchandise, Edmund H. Weber. It establishes that the analysis, exhibit 2–A, was accepted as representing the correct proportions into which the imported merchandise should be segregated. The examiner, in making the report on behalf of the appraiser to the collector, had not reported the cleaned linseed at 96.92 per centum but combined it with the per-

centage of other oil-bearing substances because he was of the opinion that all of the such oily substances should be regarded as flaxseed, and that only the non-oleaginous or oil-bearing substances in the importation represented screenings. The chief liquidator affirmed that analyses of The Linseed Association of New York were acceptable by customs officials for the purpose of determining the linseed content of importations, but was of the opinion that an analysis should also be made by the customs laboratories, and that analyses of The Linseed Association of New York should not be taken as conclusive. He admitted, however, that a Government analysis had not been made of the importation in question. The liquidator of the entry here involved stated he was not bound by a certificate of analysis but was bound by the appraiser's return, which he had accepted in the instant shipment. However, he admitted that at the time of trial, in liquidating linseed entries, he would accept the clean linseed percentage against the imported weight and that the remaining oleaginous and non-oleaginous substances would be grouped together and assessed as screenings. He described the oil-bearing substances as oil seeds which were commingled with the flaxseed.

In view of the evidence presented, it is clear that 96.92 per centum of the shipment represented all of the actual linseed imported and the remainder of the shipment was actually screenings. Paragraph 762 is entitled "Oil-bearing seeds and materials:". It then proceeds to enumerate by name certain beans, seeds, and kernels. It does not, however, make any provision for seeds and materials other than those specifically mentioned. Other oil-bearing seeds, not flaxseed, and not otherwise specifically mentioned in the paragraph, which were commingled with the importation in question, therefore would not be classifiable thereunder. On the other hand, such screened material is directly provided for in the Tariff Act of 1930 under the provision for screenings. We hold therefore that 96.92 per centum of the shipment is classifiable as flaxseed under paragraph 762, and the remaining 3.08 per centum as screenings under paragraph 731, as amended by T. D. 49752.

Judgment will be entered accordingly.